MARC M. SELTZER (054534)
mseltzer@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KALPANA SRINIVASAN (237612)
ksrinivasan@susmangodfrey.com
OLEG ELKHUNOVICH (269238)
oelkhunovich@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone: (310) 789-3100
Fax: (310) 789-3150

STEWART M. WELTMAN
(*Admitted Pro Hac Vice*)
sweltman@weltmanlawfirm.com
STEWART M. WELTMAN, LLC
53 W. Jackson Suite 364
Chicago, IL 60604
Telephone: (312) 588-5033
(OF COUNSEL LEVIN, FISHBEIN, SEDRAN
& BERMAN)

ELAINE A. RYAN
(*Admitted Pro Hac Vice*)
eryan@bffb.com
PATRICIA N. SYVERSON (203111)
psyverson@bffb.com
LINDSEY M. GOMEZ-GRAY
(*Admitted Pro Hac Vice*)
lgomez-gray@bffb.com
BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, #300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA BOHN and CINDIE TRUJILLO, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> PHARMAVITE, LLC, a California limited liability company, <br><br> Defendant. | Case No.: 2:11-cv-10430-GHK-AGR <br><br> CLASS ACTION <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Judge: The Hon. George H. King <br> Courtroom: 650 |

**PUBLIC VERSION**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   COMMON EVIDENCE WILL BE USED TO PROVE THE CLAIMS
OF THE CLASSES ..............................................................................5

    A.  Each and Every Pharmavite Vitamin E Bottle Uniformly States
"Helps Maintain a Healthy Heart"..................................................5

    B.  Common Evidence Will be Used to Prove that Vitamin E Does
Not Have Heart Health Benefits.....................................................6

    C.  Pharmavite Continues to Make Unqualified Heart Health Claims
About its Vitamin E products Even Though it Knows the
Overwhelming Weight of the Evidence Shows No Heart Benefit............7

    D.  Pharmavite was Unjustly Enriched By its Wrongful Conduct.................8

III.  PROPOSED CLASS DEFINITIONS .......................................................8

IV.  THIS CASE SATISFIES THE REQUIREMENTS OF RULE 23 .................9

    A.  Plaintiffs Satisfy the Rule 23(a) Prerequisites.........................................10

        1.    Numerosity is Satisfied.................................................10

        2.    Commonality is Satisfied..............................................10

        3.    Typicality is Satisfied. ................................................11

        4.    Adequacy of Representation...........................................12

    B.  The Requirements of Rule 23(b)(2) are Satisfied....................................14

        1.    Plaintiffs and the Class Complain of Standardized
Conduct Applicable to the Entire Class...........................14

        2.    Plaintiffs' Primary Goal is Injunctive Relief and an Order
Enjoining Further Mislabeling and Marketing of Vitamin
E. ..........................................................................14

    C.  The Requirements of Rule 23(b)(3) are Satisfied....................................16

        1.    Predominance is Satisfied..............................................16

i

2.      A Class Action is Superior to Other Available Methods of

Adjudicating the Issues Raised. ...................................................24

V.    CONCLUSION ........................................................................................25

2649214v1/013613

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Allen v. Hylands Inc.*
    No. CV 12-01150 DMG (MANx),
    2012 WL 1656750 (C.D. Cal. May 2, 2012)................................................19

*Allison v. Citgo Petroleum Corp.*
    151 F.3d 402 (5th Cir.1998).............................................................15

*Amchem Prods. v. Windsor*
    521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231  (1997).......................9, 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
    133 S. Ct. 1184 (2013) ...............................................................23

*AT & T Mobility LLC v. AU Optronics Corp.*
    707 F.3d 1106 (9th Cir. 2013)..........................................................19

*Bank of the West v. Super. Ct.*
    2 Cal. 4th 1254, 10 Cal.Rptr.2d 538 (1992).............................................22

*Brooks v. Midas-Int'l Corp.*
    47 Ill. App. 3d 266, 361 N.E.2d 815 (1st Dist. 1977)...................................4

*Brown v. Brewer*
    No. CV 06-3731-GHK (JTLx), 2009 WL 1574556
    (C.D. Cal. May 29, 2009).............................................................13

*Bruno v. Eckhart Corp.*
    280 F.R.D. 540 (C.D. Cal. 2012) .....................................................20

*Churchhill Village, L.L.C. v. Gen. Elec. Co.,*
    169 F. Supp. 2d 1119 (N.D. Cal. 2010)................................................9

*Colgan v. Leatherman Tool Grp., Inc.*
    135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (2006)................................21, 25

2649214v1/013613

*Comcast Corp. v. Behrend*
    No. 11-864, 569 U.S. - - -, 2013 WL 1222646 (March 27, 2013) ...............25

*Connick v. Suzuki Motor Co., Ltd*
    174 Ill. 2d 482, 675 N.E.2d 584 (1996) ...................................................21, 22

*Countrywide Fin. Corp. v. Bundy*
    187 Cal. App. 4th 234, 113 Cal. Rptr. 3d 705 (2010)...................................21

*Delarosa v. Boiron, Inc.*
    275 F.R.D. 582 (C.D. Cal. 2011) ...................................................................26

*Deposit Guar. Nat'l Bank v. Rope*
    445 U.S. 326, 63 L. Ed. 2d 427, 100 S. Ct. 1166 (1980) ..............................26

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974) ................................10

*Engalla v. Permanente Medical Group, Inc.*
    15 Cal. 4th 951, 938 P.2d 903 (1997) ..........................................................23

*Fine v. ConAgra Foods, Inc.*
    No. CV 10-01848 SJO (CFOx),
    2010 WL 3632469 (C.D. Cal. Aug. 26, 2010) ..............................................11

*Forcellati v. Hyland's Inc.*
    876 F. Supp. 2d 1155 (N.D. Cal. June 1, 2012) ...........................................20

*Fragale v. Faulkner*
    110 Cal. App. 4th 229, 1 Cal. Rptr. 3d 616 (2003) ......................................16

*Frye v. L'Oreal USA, Inc.*
    583 F. Supp. 2d 954 (N.D. Ill. 2008).............................................................15

*FTC v. Figgie Int'l., Inc.*
    994 F.2d 595 (9th Cir. 1993).........................................................................24

*F.T.C. v. Pantron I Corp.*
    33 F.3d 1088 (9th Cir. 1994).............................................................3, 18, 23

iv

*Gartin v. S & M Nutec, LLC*
        245 F.R.D. 429 (C.D. Cal. 2007) ................................................................17

*Hanlon v. Chrysler Corp.*
        150 F.3d 1011 (9th Cir. 1998)................................................................*passim*

*Hanon v. Dataproducts Corp.*
        976 F.2d 497 (9th Cir. 1992)................................................................12

*In re Tobacco II Cases*
        46 Cal. 4th 298, 207 P.3d 20 (2009) ............................................2, 18, 21, 23

*In re Computer Memories Sec. Litig.*
        111 F.R.D. 675 (N.D. Cal. 1986) ................................................................20

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*
        C 10-02124 SI, 2011 WL 6372412 (N.D. Cal. Dec. 20, 2011)......................16

*In re POM Wonderful LLC Mktg. and Sales Practices Litig.*
        No. ML 10–02199 DDP (RZx), 2012 WL 4490860
        (C.D. Cal. Sept. 28, 2012) ................................................................22, 23

*In re Vioxx Class Cases*
        180 Cal. App. 4th 116, 103 Cal. Rptr. 3d 83 (2009)......................................21

*In re Steroid Hormone Prod. Cases*
        181 Cal. App. 4th 145, 104 Cal. Rptr. 3d 329 (2010)..................................23

*Johns v. Bayer Corp.*
        280 F.R.D. 551 (S.D. Cal. 2012)............................................................12, 13

*Kasky v. Nike Inc.*
        27 Cal. 4th 939, 45 P.3d 243 (2002) ................................................................22

*Kearney v. Solomon Smith Barney, Inc.*
        39 Cal. 4th 95, 45 Cal. Rptr. 2d 730 (2006)................................................19

*Keilholtz v. Lennox Health Prods., Inc.*
        268 F.R.D. 330 (N.D. Cal. 2010) ................................................12, 18, 19

2649214v1/013613

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal. 4th 1134 Cal. Rptr. 2d 29 (2003) ...................................................... 15

*Kwikset Corp. v. Superior Court*
    51 Cal. 4th 310, 246 P.3d 877 (2011) ...............................................*passim*

*Lavie v. Procter & Gamble Co.*
    105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003) ............................ 21, 22

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001) .......................................................... 16

*Mass Mutual Life Ins. Co. v. Superior Court*
    97 Cal. App. 4th 1282, 119 Cal. Rptr. 190 (2002) ................................ 22, 23

*Mazza v. Am. Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012) ........................................................... 20

*McCann v. Foster Wheeler LLC*
    48 Cal. 4th 68 105 Cal. Rptr. 3d 378 (2010) ........................................ 19

*Negrete v. Allianz Life Ins. Co.*
    287 F.R.D. 590 (C.D. Cal. 2012) ...................................................... 24

*O'Donovan v. CashCall, Inc.*
    278 F.R.D. 479 (N.D. Cal. 2011) ...................................................... 18

*Pecover v. Electronic Arts, Inc.*
    No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010). ....... 19

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985) ...................... 10, 18

*PJ's Concrete Pumping Service Inc. v. Nextel West Corp.*
    345 Ill. App. 3d 992 (2d Dist. 2004) .......................................... 2, 21, 22

*Reynoso v. So. Cnty. Concepts*
    No. 07-373, 2007 WL 4592119 (C.D. Cal. Oct. 15, 2007) ....................... 10

*S37 Mgmt., Inc. v. Advance Refrigeration Co.*
    61 N.E. 2d 6 (1st Dist. 2011) .......................................................... 4

vi

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ........................................................13

*Stearns v. Ticketmaster Corp.*
    655 F.3d 1013 (9th Cir. 2011) ......................................................22

*Tait v. BSH Home Appliances Corp.*
    No. SA CV 10-0711 DOC (ANx), 2012 WL 6699247
    (C.D. Cal. Dec. 20, 2012) ...............................................................4

*United Steel, Paper & Forestry, Rubber, Mfg. Energy,*
*Allied Indus. & Serv. Workers Int'l Union,*
*AFL-CIO v. ConocoPhillips Co.*
    593 F.3d 802 (9th Cir. 2010) ........................................................10

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ........................................................25

*Vasquez v. Superior Court*
    4 Cal. 3d 800, 94 Cal. Rptr. 796 (1971) ...............................10, 26

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 ...............................................................................11

*Walters v. Reno*
    145 F.3d 1032 (9th Cir. 1998) ......................................................14

*Wash. Mut. Bank v. Superior Court*
    24 Cal. 4th 906, 103 Cal. Rptr. 2d 320 (2001). ..........................19

*Weinstat v. Dentsply Intern., Inc.*
    180 Cal. App. 4th 1213, 103 Cal. Rptr. 3d 614 (2010) ..............22

*Wiener v. Dannon Co., Inc.*
    255 F.R.D. 658 (C.D. Cal. 2009) ..........................................*passim*

*Williams v. Gerber Food Prods. Co.*
    552 F.3d 934 (9th Cir. 2008) ........................................................21

vii

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir. 2001) .................................................................. 25

**CODES**
Cal. Bus. & Prof. Code §17200 ........................................................... 1, 22
Cal. Bus. & Prof. Code §17203 .............................................................. 10
Cal. Civ. Code §1781 .......................................................................... 10
Cal. Civ. Code §1750 ............................................................................ 1
815 Ill. Comp. Stat. 502/1 ..................................................................... 1

**RULES**
Fed. R. Civ. P. 23(a) .................................................................. 9, 10, 11
Fed. R. Civ. P. 23(a)(1) ....................................................................... 11
Fed. R. Civ. P. 23(a)(2) ................................................................. 11, 13
Fed. R. Civ. P. 23(a)(3) ....................................................................... 12
Fed. R. Civ. P. 23(a)(4) ................................................................. 13, 14
Fed. R. Civ. P. 23(b)(2) ...................................................... 9, 14, 15, 16
Fed. R. Civ. P. 23(b)(3) ................................................................. *passim*
Fed. R. Civ. P. 23(g) ...................................................................... 4, 14

2649214v1/013613

Plaintiffs Rebecca Bohn and Cindie Trujillo respectfully submit this memorandum in support of their motion to certify a multi-state Class pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.,* and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.,* or, alternatively, a California-only Class under the UCL and CLRA and an Illinois-only Class under Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 502/1, *et seq.,* against defendant Pharmavite, LLC ("Pharmavite").

## I.   **INTRODUCTION**

Pharmavite manufactures, distributes, markets and sells the Nature Made line of products which are claimed by Pharmavite to be "████████████████████" of vitamins, minerals and dietary supplements.  Ex. 1.[1]  Five of these products are the Vitamin E supplements at issue here, which are sold in virtually every major "████ ████████████" retail outlet in the country.[2]  *Id.*  Pharmavite represents in its labeling on each bottle that the products "help[] maintain a healthy heart."  No other benefit is mentioned on the product packages.  In fact, Pharmavite's Vitamin E products do *not* provide the promised "healthy heart" benefit.  Numerous large scale clinical studies have shown that Vitamin E does not benefit the heart.  Pharmavite's heart health representation is thus false, misleading, and reasonably likely to deceive the public.  Based on the heart health misrepresentation— uniformly made on the label of the products—Pharmavite has misled and continues to mislead the public.  Every consumer who purchased the products suffered a common economic injury in that they paid for a product that does not provide the

---

[1] True and correct copies of all exhibits cited herein and referenced as "Ex. ___" are attached to the Declaration of Patricia N. Syverson ("Syverson Decl."), dated April 4, 2013, and filed concurrently herewith.

[2] The products are (1) Natural Vitamin E 400 IU d-Alpha; (2) Vitamin E 400 IU dl Alpha; (3) Vitamin E 400 I.U. Water Solubilized; (4) Vitamin E 1000 IU dl Alpha; and (5) Vitamin E 200 IU dl Alpha.

1

sole benefit represented on the label.

The issue presented by this motion is not whether Pharmavite's heart health representation is in fact false or misleading (which are questions of fact common to the Classes that will be resolved by the trier of fact), but whether plaintiffs can present their case on a classwide basis. In this case, the claims here are well-suited for class treatment. Throughout the Class period, Pharmavite's products all contained the same ingredient—Vitamin E—and all came in bottles that claimed the same heart health benefit. And, as a matter of law, the misleading nature of Pharmavite's advertising claims must be judged according to a single, objective standard, namely, whether the statements at issue were "like[ly] to deceive a reasonable person." *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327, 93 Cal. Rptr. 3d 559, 581–82 (2009) (CLRA and UCL claims); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332–33, 120 Cal. Rptr. 3d 741, 759–760 (2011) (same); *PJ's Concrete Pumping Serv. Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1002, 803 N.E.2d 1020, 1029 (2d Dist. 2004) (holding that under ICFA, multi-state class certification is appropriate where the misrepresentation was uniform and "has at least the potential to deceive customers").

Plaintiffs will present scientific evidence common to the Classes that Vitamin E does not provide the heart health benefit Pharmavite claims it does. This evidence will take the form of: (1) actual clinical studies that demonstrate that Vitamin E does not provide the heart health benefit Pharmavite represents; (2) internal Pharmavite documents reflecting its awareness of these studies and their implications;[3] and (3) expert testimony that Vitamin E does not provide the heart health benefit. Attached to the Syverson Declaration is the Expert Report of Dr.

---

[3] For example, an internal Pharmavite email from March of 2005, noted ███████████████████████████████████████████████████████████ Ex. 2.

2

1  Edgar (Pete) Raymond Miller III, M.D., Ph.D, of Johns Hopkins Medical
2  University ("Miller Report") (Ex. 23). Dr. Miller is one of the world's foremost
3  authorities on Vitamin E and has been actively engaged in numerous clinical
4  studies involving Vitamin E. Dr. Miller's report sets forth in detail the scientific
5  evidence based on a study of hundreds of thousands of subjects that demonstrates
6  that Vitamin E does not provide a heart health benefit.[4]

7       The issue of whether Vitamin E provides the heart health benefit claimed by
8  Pharmavite is a common question of fact, which by its very nature is equally
9  applicable to every Class member and susceptible to classwide proof. Likewise,
10  under the objective "likelihood of deception" standard, plaintiffs' claims can be
11  demonstrated by proof common to the Classes based on the materiality of
12  Pharamavite's heart health claims. Label representations are presumed to be
13  material. *See F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095–96 (9th Cir. 1994)
14  ("Express product claims are presumed to be material. . . ."); *see also Kwikset*, 51
15  Cal. 4th at 328. Here, the presumption is particularly applicable given the
16  prominence of the health benefit representation on the front of Pharmavite's
17  Vitamin E products and the absence of any other represented benefit on the
18  products' packaging. Because the veracity of the heart health representation and its
19  materiality can be determined through common proof on a classwide basis, a Class
20  should be certified. Further, because the products do not provide the only benefit
21  represented on the label (a heart health benefit), the monetary loss to each Class

---

[4] Early observational studies indicated a possibility of heart health benefits from the use of Vitamin E. These studies merely indicate the need for clinical studies. Ex. 23 at ¶¶ 5–7. Pharmavite apparently concedes that is so. *See* Ex. 3 (setting out "████████████████████████████" reflecting that the highest level of scientific support involves the results of multiple clinical trials published in peer reviewed journals). After the results of these observational studies were reported, large scale clinical trials, the only credible scientific means of determining whether a substance has an intended clinical benefit, were conducted. Ex. 23 at ¶¶ 8–10; *see also* Ex. 3. These studies, involving hundreds of thousands of subjects all reached the same conclusion: Vitamin E *does not* provide any heart health benefit. Ex. 23 at ¶¶ 11–19.

3

member is identical (the purchase price of the Vitamin E).  As set forth in the Amended Expert Report of Mr. Keith Reutter Ph.D. (Ex. 24), relief and damages can be calculated on a common classwide basis using data maintained by Pharmavite as well as sales data that can be obtained from third parties, such as Neilsen.

False advertising cases like this, which are based on uniform misrepresentations, are routinely certified as class actions under California and Illinois law because common questions of fact and law predominate. *See, e.g., Tait v. BSH Home Appliances Corp.*, No. SA CV 10–0711 DOC (ANx), 2012 WL 6699247, at *12 (C.D. Cal. Dec. 20, 2012) (certifying a class of California purchasers of front-loading washing machines stating "district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL"); *S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 61 N.E. 2d 6, 16 (1st Dist. 2011) (affirming certification of an ICFA class alleging defendant falsely represented invoice charges); *Brooks v. Midas Int'l Corp.*, 47 Ill. App. 3d 266, 273, 361 N.E.2d 815, 820 (1st Dist. 1977) ("In the present case, plaintiff alleged that defendant's advertising was the operative fact, common to each class member, which gave rise to the action. As we have already stated, whether defendant's advertising constituted an unlawful practice is the dominant question in this case.").

Thus, plaintiffs seek certification of a multi-state UCL and CLRA Class (applying California law)—or, in the alternative a California-only Class for those claims and an Illinois-only ICFA Class—of consumers who purchased Pharmavite's Vitamin E products during the applicable statute of limitations periods (the "Class Period").  Plaintiffs also seek an order appointing plaintiffs Bohn and Trujillo as class representatives and the firms of Bonnett, Fairbourn, Friedman & Balint, P.C., Stewart M. Weltman LLC and Susman Godfrey L.L.P. as Class counsel pursuant to Fed. R. Civ. P. 23(g).

4

## II. COMMON EVIDENCE WILL BE USED TO PROVE THE CLAIMS OF THE CLASSES

### A. Each and Every Pharmavite Vitamin E Bottle Uniformly States "Helps Maintain a Healthy Heart".



Pharmavite fully understood the "

" Ex. 4. This is so because "

Ex. 5 (emphasis added).

Recognizing the importance of point of purchase messaging - especially on the package itself—*every* Vitamin E package sold during the Class Period contained the same affirmative benefit message: Vitamin E "helps maintain a healthy heart." *See* Ex. 6 for full label. The reverse side of the bottle, in all caps and bold font, reiterates that Vitamin E "HELPS MAINTAIN A HEALTHY HEART." *Id.* That Pharmavite has made uniform representations about heart health benefits of its Vitamin E is established by the simple, undeniable fact that this representation appears on the front of each Pharmavite Vitamin E product label. Pharmavite has admitted this. In its answer to Paragraph 1 of plaintiffs' second amended complaint, "Pharmavite admits that the product packaging of the Vitamin E products identified in Paragraph 9 of the [second amended complaint], at least at one point in time, contained the words 'Help Maintains a Healthy Heart.'"[5] *See also* Ex. 9 (Pharmavite's RFA Resps. Nos. 1, 9 & 11 (Pharmavite admits that

---

[5] It is unclear whether Pharmavite's Vitamin E product labels did not at some point in time make the heart health claim at issue in this case but the evidence shows that the misrepresentations were made at the time of plaintiffs' purchases and throughout the Class Period, Ex. 7, and are still being made on the labels of defendant's products today. *See* Ex. 8 (copy of current label on web site).

"during the applicable statute of limitations period" all the products at issue "contained the phrase 'helps maintain a healthy heart'"; that the labels have "not varied based on the state in which the product is sold" and that the marketing designs "did not vary on a state to state basis")).

**B.    Common Evidence Will be Used to Prove that Vitamin E Does Not Have Heart Health Benefits.**

Plaintiffs will be able to prove by evidence common to the Classes that Pharmavite's heart health claim is false and misleading.  Clinical studies both pre-dating and conducted during the Class period have shown that the sole "active" ingredient in the products—Vitamin E—does not provide heart benefits.  Dr. Miller, who has personally studied the effects of Vitamin E on the heart, unequivocally states that "the evidence of benefit of vitamin E supplementation on heart health from large randomized trials is very strong and has been consistent: Vitamin E supplementation *does not* reduce risk for cardiovascular disease . . .".  *See* Ex. 23.  For example, Dr. Miller explains that a "meta-analysis of 14 large trials (including the CHAOS, HOPE and PPP trials) published in 2004, found no benefit of vitamin E supplementation at reducing cardiovascular events."  *Id.* at ¶ 16.  Dr. Miller's conclusions could not be more clear: [I]t does not 'help maintain a healthy heart.'"  *See* Ex. 23 at ¶ 4.  Dr. Miller explains:

> Many large trials have been published since publication of this 2004 meta-analysis that provided a unique opportunity to assess the robustness of prior study conclusions on mortality and effects on CVD end points. . . . . ***All of these trials showed that there was no protective effect of vitamin E supplementation on all-cause mortality. . . . Collectively, and individually, these trials showed that there was no benefit on cardiovascular end points.***

*Id.* at ¶ 17 (internal citations omitted; emphasis added).  Thus, the "totality of the evidence" strongly supports that Vitamin E does not provide any heart health

6

1  benefits, and that, as a result, Pharmavite's heart health representation is false. *Id.*
2  at ¶ 19.  But whether the heart health representation is true is not the issue at class
3  certification.  The question is whether this issue is a common predominant question
4  subject to classwide proof that can be answered in "one stroke."  The answer is a
5  resounding "yes."

6  **C.**    **Pharmavite Continues to Make Unqualified Heart Health Claims**
7        **About its Vitamin E products Even Though it Knows the**
8        **Overwhelming Weight of the Evidence Shows No Heart Benefit.**

9        Pharmavite was aware of these negative studies from their date of
10  publication, and often before publication.  Ex. 2.  Yet, instead of pulling the falsely
11  labeled bottles off the store shelves and ceasing further use of the heart health
12  benefit claims, Pharmavite resolved to " ████████████████████ " Exs. 10–11.
13  To do so, Pharmavite engaged in an ill-founded attack on the science—what it
14  referred to as " ██████████████████ "  Ex. 11.  However, Dr. Miller
15  states, both the Miller analysis and the subsequent HOPE TOO studies were large
16  randomized clinical trials that, without exception, demonstrate that Vitamin E does
17  not provide heart health benefits.  Ex. 23 at ¶¶ 15–16.  Furthermore, numerous
18  additional clinical studies have been performed and reported since 2005, which
19  have all reached the same conclusion:  Vitamin E does not provide heart health
20  benefits. *Id.* at ¶17.

21        At the same time it was downplaying the significance of the negative
22  scientific findings, Pharmavite poured millions of dollars into retaining current
23  users and increasing its share of the Vitamin E market.  Exs. 10 & 12 (outlining
24  Pharmavite plan to " ██████████████████████████████████████████
25  ████████████████████████████████████████████████████████████████
26  ████████████████████████████████ ").  Headlining its efforts to
27  increase sales in the face of mounting evidence that Vitamin E does not provide
28  heart health benefits was its " ████████████████ " campaign which

7

1    included:  targeted advertising in all media (including internet, print, radio) (Ex.

2    12); coupons to " ████████████████████████████ " (Exs. 10–11);

3    retailer resources ( ███████████████████████████████████████

4    ████████████████████████████████ "; and " ████████████████████

5    █████ " Ex. 11.  And, most important, it kept the "Helps Maintain Healthy

6    Heart" message prominently on the front of its product package labeling.

7          Pharmavite mounted its " ████████████████████ " marketing campaign

8    even though it knew the totality of the scientific evidence showed no heart benefit.

9    And, it pushed forward even though certain of its staff, including Carroll Reider,

10   Pharmavite's Director of Consumer Education, expressed concern over the

11   represented heart benefit.  Ex. 13 (stating ████████████████████████████

12   ███████████ in reaction to Pharmavite's proposed statement that " ████████

13   ████████████████ ").

14        **D.**    **Pharmavite was Unjustly Enriched By its Wrongful Conduct.**

15          Pharmavite was not willing to stop making the false heart health benefit

16   claims because, in Pharmavite's own words, Vitamin E is a " ███████████ " due to

17   " ███████████████████████ " Ex. 14.  The sales of Vitamin E are in the

18   multiple millions of dollars each year. *See, e.g.,* Exs. 15 and 24–25.[6] Plaintiffs will

19   seek to prove by evidence common to the Classes that Pharmavite has reaped

20   substantial profits by misrepresenting the heart health benefits of its Vitamin E.

21   **III.**   **PROPOSED CLASS DEFINITIONS**

22          Plaintiffs seek class certification under Fed. R. Civ. P. 23(a), 23(b)(2) and

23   23(b)(3) of the following multi-state UCL and CLRA Class, or, in the alternative,

24   California and Illinois-only Classes:[7]

---

25   [6] As Dr. Reutter, plaintiffs' damages expert opines, the total retail and wholesale

26   sales are readily ascertainable from Pharmavite's sales documents and independent
retail data services. *See* Ex. 24 at ¶ 7.

27   [7] Excluded from the proposed Classes are defendant, its parents, subsidiaries,

28   affiliates, officers and directors, and persons who purchased Vitamin E for resale.

8

**Multi-State UCL and CLRA 17-State Class:**

> All consumers who, within the applicable statute of limitations, purchased Pharmavite's Vitamin E products in California, Arkansas, Connecticut, Delaware, Florida, Hawaii, Idaho, Illinois, Kansas, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Vermont and/or Washington.

**UCL and CLRA California-Only Class:**

> All consumers who, within the applicable statute of limitations, purchased Pharmavite's Vitamin E products in California.

**ICFA Illinois-Only Class:**

> All consumers who, within the applicable statute of limitations, purchased Pharmavite's Vitamin E products in Illinois.

The Classes, as defined above, are ascertainable as the definitions are precise, and class membership can be determined by entirely objective means. *See, e.g., Churchhill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126–27 (N.D. Cal. 2010).

## IV.   THIS CASE SATISFIES THE REQUIREMENTS OF RULE 23

Consumer protection claims are ideal for class certification. *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 625, 138 L. Ed. 2d 689, 117 S. Ct. 2231, 2250 (1997). Plaintiffs' statutory claims expressly provide for class certification. The CLRA even includes class action prerequisites in its provisions. *See* Cal. Civ. Code §1781; *see also* Cal. Bus. & Prof. Code §17203 (claimants "may pursue representative claims or relief on behalf of others" for violations of the UCL, including false advertising). Such cases are particularly appropriate for class treatment because "the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct." *Vasquez*, 4 Cal. 3d at 808.

"'In determining the propriety of a class action, the question is not whether

9

1  the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits,

2  but rather whether the requirements of Rule 23 are met.'" *Eisen v. Carlisle &*

3  *Jacquelin*, 417 U.S. 156, 178, 40 L. Ed. 2d 732, 94 S. Ct. 2140, 2153 (1974)

4  (citation omitted).  Although courts must inquire into the substance of a case if they

5  overlap with the Rule 23(a) factors, "[t]he court may not go so far . . . as to judge

6  the validity of the claims."  *United Steel, Paper & Forestry, Rubber, Mfg. Energy,*

7  *Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593

8  F.3d 802, 808 (9th Cir. 2010) (quotation marks omitted).

9     A.   **Plaintiffs Satisfy the Rule 23(a) Prerequisites.**

10    Plaintiffs satisfy each of the Rule 23(a) prerequisites for class certification,

11 referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.

12    1.   **Numerosity is Satisfied.**

13    Pharmavite's documents show annual Vitamin E sales in the hundreds of

14 thousands of units.  *See, e.g.,* Ex. 15.  Counsel for Pharmavite have advised

15 plaintiffs that Pharmavite does not contest numerosity.  Syverson Decl., at ¶ 2.  *See*

16 *also Reynoso v. South County Concepts*, No. 07-373, 2007 WL 4592119, at *2

17 (C.D. Cal. Oct. 15, 2007) ("The sheer number of potential class members justifies

18 the Court's finding that the class in this case meets the numerosity requirement.").

19    2.   **Commonality is Satisfied.**

20    Rule 23(a)(2) requires that "there are questions of law or fact common to the

21 class."  "Commonality requires the plaintiff to demonstrate that the class members

22 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

23 2551, 180 L. Ed. 2d 374 ("*Dukes II*") (quotations omitted).  The plaintiff must

24 allege that the class' injuries "depend upon a common contention" that is "capable

25 of classwide resolution."  *Id*.  In other words, the "determination of [the common

26 contention's] truth or falsity will resolve an issue that is central to the validity of

27 each one of the claims in one stroke."  *Id*.  "What matters to class certification . . .

28 [is] the capacity of a classwide proceeding to generate common answers apt to drive

10

1   the resolution of the litigation." *Id.* (internal quotation marks and citation omitted).

2   This prerequisite is readily met in this case.   To quote the Court in *Wiener v.*

3   *Dannon Co., Inc.,* 255 F.R.D. 658 (C.D. Cal. 2009):  "The proposed class members

4   clearly share common legal issues regarding [Defendant's] alleged deception and

5   misrepresentations in its advertising and promotion of the products." *Id.* at 664–65.

6       Plaintiffs' claims raise common issues capable of classwide resolution.  For

7   example, whether the scientific evidence is that Vitamin E does not help "maintain

8   a healthy heart" as represented on every package of Vitamin E sold during the Class

9   period and whether Pharmavite's packaging and advertising of its Vitamin E

10   products was deceptive and likely to deceive the public are common questions that

11   can be analyzed and resolved on a classwide basis for all Class members.  *See, e.g.,*

12   *Fine v. ConAgra Foods, Inc.*, CV 10-01848-SJO-CFOX, 2010 WL 3632469, at *3

13   (C.D. Cal. Aug. 26, 2010) ("Since Plaintiffs claims and the proposed class are

14   *based on the same misleading label on the boxes* of popcorn, the Court finds that

15   Plaintiff has sufficiently demonstrated commonality pursuant to Rule 23(a)(2).")

16   (emphasis added).  Thus, commonality is satisfied.

17               **3.    Typicality is Satisfied.**

18       Rule 23(a)(3) typicality is satisfied where plaintiffs' claims are "reasonably

19   co-extensive" with absent Class members' claims; they need not be "substantially

20   identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *see also*

21   *Wiener*, 255 F.R.D. at 665.  "The test of typicality 'is whether other members have

22   the same or similar injury, whether the action is based on conduct which is not

23   unique to the named plaintiffs, and whether other class members have been injured

24   by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

25   (9th Cir. 1992).   A recent false advertising case, *Johns v. Bayer Corp.*, 280 F.R.D.

26   551 (S.D. Cal. 2012)*,* is instructive.  There, the court found, in certifying UCL and

27   CLRA claims, that the typicality requirement was satisfied:

28       [T]he Men's Vitamin packages purchased by plaintiffs and all class

11

members prominently and repeatedly featured the identical 'supports prostate health' claim.  Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements.  The Court therefore finds that plaintiffs have satisfied both the typicality and adequacy requirements.

280 F.R.D. at 557; *see also Keilholtz v. Lennox Health Prods., Inc.*, 268 F.R.D. 330, 338 (N.D. Cal. 2010) (certifying UCL and CLRA claims, court found typicality requirement satisfied because "plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings" and therefore are "reasonably co-extensive with those of absent class members"). Similarly, in *Neal v. NaturalCare, Inc.*, EDCV 12-00531 DOC (OPx) (E.D. Cal. Dec. 20, 2012), the court found:  "A plaintiff's individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL, and CLRA is established by an objective test." Order Granting Class Certification at 10 (Ex. 16).

Likewise, typicality is met here as plaintiffs and the proposed Classes assert exactly the same claim—arising from the same course of conduct—Pharmavite's false and misleading heart health representations featured as the exclusive products benefit on every Vitamin E package sold.  And plaintiffs, like every Class member, were injured when they paid money to purchase Vitamin E. *See Johns*, 280 F.R.D. at 557 (finding typicality where "plaintiffs and class members were allegedly injured when they paid money to purchase the Men's Vitamins").  Accordingly, plaintiffs are well-suited to represent the Classes.

### 4.    Adequacy of Representation.

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the Class. *See, e.g., Staton v. Boeing Co.*, 327 F.3d

12

1   938 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Wiener*, 255 F.R.D. at 667.

2        The interests of plaintiffs and the members of the Classes are fully aligned in

3   determining whether Pharmavite's heart health representation was likely to deceive

4   a reasonable consumer.   Plaintiff Bohn demonstrated her adequacy during her

5   recent deposition where she endured five hours of extensive questioning by

6   Pharmavite's counsel.   Plaintiff Bohn testified about her willingness to participate

7   in the litigation (including reviewing and searching for documents), her knowledge

8   of the case and what relief she is seeking (Ex. 19, Bohn Depo. at 157–159, 177–

9   184)[8]; how she came to be involved in the litigation (*Id*. at 147–153); and the

10   details regarding her purchase decision (*Id*. at 111–114 (Costco purchase

11   experience), 119–130 (paid $16-18 for a 350 gel cap container of 400 I.U. Vitamin

12   E at the end of 2011 after seeing that the product claimed to "maintain[] heart

13   health")); *see also* Ex. 17 (Bohn Decl., at 2–3).[9]

14        Like plaintiff Bohn, plaintiff Trujillo purchased Vitamin E in reliance on the

15   same heart health benefit representation, and suffered the same out-of-pocket loss

16   as plaintiff Bohn and the other Class members. Ex. 18 (Trujillo Decl., at ¶¶ 2–3).

17   To satisfy Rule 23(a)(4), plaintiffs "need not be perfect, only adequate." *Polanco v.*

18   *Schneider Nat'l Carriers, Inc*, CV 10-4565-GHK (JEMx), slip op. at 4 (C.D. Cal.

19   April 25, 2012) (citations omitted) (Ex. 20).   Here, as set forth above, plaintiffs

20   have more than satisfied the first prong of the adequacy requirement. *See Wiener*,

21   255 F.R.D. at 667.

22        Plaintiffs also have satisfied the second prong of the adequacy requirement

23   by retaining counsel with significant experience in prosecuting class actions,

24

25   [8] *See Id*. at 157:25-158:20 (Plaintiff is seeking a return of her "purchase price" – "I mean, I lost my whatever $16 to $18" – and that "they change[] the labeling" and

26   "remove[] the 'maintains a health heart' or 'maintains health heart [sic].'").

27   [9] *See Brown v. Brewer*, No. CV 06–3731–GHK (JTLx), 2009 WL 1574556, at *4 (C.D. Cal. May 29, 2009) (based on similar testimony, court found plaintiff

28   sufficiently knowledgeable of case and role as representative to satisfy adequacy).

13

2649214v1/013613

including false advertising cases, who plaintiffs should be appointed Class counsel pursuant to Rule 23(g).  *See* Ex. 21 (firm resumes).  Thus, adequacy is met.[10]

### B.    The Requirements of Rule 23(b)(2) are Satisfied.

#### 1.    Plaintiffs and the Class Complain of Standardized Conduct Applicable to the Entire Class.

Pursuant to Rule 23(b)(2), a class action is properly certified where the party against whom the relief is sought "has acted or refused to act on grounds generally applicable to a class of persons, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  For a Rule 23(b)(2) class to be certified, "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[, e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id.*  Here, plaintiffs and the Class complain of a standard and uniform practice of false, misleading and deceptive advertising of Vitamin E that is generally applicable to the Class as a whole.

#### 2.    Plaintiffs' Primary Goal is Injunctive Relief and an Order Enjoining Further Mislabeling and Marketing of Vitamin E.

Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages.  As the Supreme Court clarified in *Dukes*:

> [A] (b)(2) class would permit the certification of monetary relief that is 'incidental to requested injunctive or declaratory relief,' which [the Fifth Circuit] defined as 'damages that flow directly from liability to

---

[10] Rule 23(g)(1) also requires the Court to appoint Class Counsel.  Specifically, Plaintiffs request the Court appoint Bonnett, Fairbourn, Friedman & Balint, Stewart M. Weltman LLC, and Susman Godfrey.

the class as a whole on the claims forming the basis of the injunctive or declaratory relief.' In [the Fifth Circuit's] view, such 'incidental damage should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new substantial legal or factual issues, nor entail complex individualized determinations.'

*Dukes II*, 131 S. Ct. at 2560 (discussing the standard of *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998) without holding it to be correct or incorrect).

Here, the monetary relief sought flows directly from the requested declaratory and injunctive relief. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149, 131 Cal. Rptr. 2d 29 (2003) ("The object of restitution [under the UCL] is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957–58 (N.D. Ill. 2008) (stating the measure of damages under ICFA "is the amount [plaintiff] is actually out-of-pocket by reason of the transaction.").[11]

Certification under Rule 23(b)(2) is appropriate if the monetary relief "be calculated formulaically." *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, C 10-02124 SI, 2011 WL 6372412, at *7 (N.D. Cal. Dec. 20, 2011). In this instance, the monetary relief to plaintiffs and the class members represents the difference between the value of the product received and the price of the product, and can be calculated using a common formulaic approach. *See infra* Section IV.C.1.d.

Plaintiffs' UCL, CLRA and ICFA claims all seek injunctive relief necessary to prevent further fraudulent and unfair business practices by Pharmavite. The monetary relief is necessary to afford complete relief and incidental to plaintiffs'

---

[11] *See also Fragale v. Faulkner*, 110 Cal. App. 4th 229, 236, 1 Cal. Rptr. 3d 616, 621 (2003) (holding that the "out-of-pocket" measure of damages applicable under the CLRA "restores a plaintiff to the financial position he enjoyed prior to the fraudulent transaction").

15

goal of restraining Pharmavite from herein continuing to make claims that are contrary to the scientific evidence.

### C.   The Requirements of Rule 23(b)(3) are Satisfied.

Under Rule 23(b)(3), certification is appropriate if:  (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162–63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022.  Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted); *Wiener*, 255 F.R.D. at 668.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation omitted).  As such, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, [a class action] will be considered proper . . . even though other matters will have to be tried separately." *Gartin v. S & M Nutec, LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) (internal citation omitted; alteration in original); *Wiener*, 255 F.R.D. at 668.

### 1.   Predominance is Satisfied.

#### a.   Common Issues Can Be Proven on a Classwide Basis.

"Predominance is a test readily met in certain cases alleging consumer or

securities fraud." *Amchem*, 521 U.S. at 625. "Courts in California 'routinely find that this inquiry focuses on the Defendants' representations about the product . . . .'" *Neal*, Order at 15 (finding predominance satisfied where "central predominating question is whether Defendants' label and marketing statements are materially misleading") (Ex. 16). Rule 23(b)(3) demands only predominance of common questions, not exclusivity or unanimity of them.

Common issues unquestionably predominate in this litigation. With respect to liability, the overriding common questions are whether Pharmavite misrepresented that Vitamin E has the ability to "maintain a health[y] heart" and whether the misrepresentations were likely to deceive a reasonable consumer. The first is binary—either Pharmavite misrepresented that its Vitamin E has the ability to maintain heart health or not. If each Class member were to pursue his or her claim individually, the evidence, including the science, necessary to support the individual claims would be identical in each case. *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 493 (N.D. Cal. 2011) (in finding predominance was satisfied, court found that each of the common questions can be proven with "generalized evidence…on a class-wide basis"). *See generally* Ex. 23 (Miller Report).

The second predominant question of "likelihood to deceive a reasonable consumer" is an objective inquiry based on the materiality of the heart health representation. *See Tobacco II*, 46 Cal. 4th at 327 (CLRA and UCL claims); *see also Kwikset,* 51 Cal. 4th at 332–33 (same). Label representations are presumed to be material. *See Pantron*, 33 F.3d at 1095–96; *see also Kwikset,* 51 Cal. 4th at 328. And, the heart health representation need only be a "factor"—not the only factor nor even a "predominating factor"—motivating the purchase. *See Tobacco II*, 46 Cal. 4th at 326–27; *see also Kwikset Corp.*, 51 Cal. 4th at 327 (same).

Further, plaintiffs and all Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing. Under these circumstances, there is a sufficient basis to find that the requirements of Rule 23(b)(3) are present.

17

1    *See Wiener*, 255 F.R.D. at 669 (finding predominance satisfied when alleged

2    misrepresentation of product's health benefits were displayed on every package).

3                      b.    <u>**California Law Can Be Applied to a Multi-State Class.**</u>

4           To apply California law to non-California residents without "violating due

5    process, the court must find that California has a significant contact or significant

6    aggregation of contacts to the claims asserted by each member of the plaintiff class,

7    contacts creating state interests, in order to ensure that the choice of [the forum

8    state's] law is not arbitrary or unfair."   *Keilholtz,* 268 F.R.D. at 339 (quoting

9    *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22, 86 L. Ed. 2d 628, 105 S.

10   Ct. 2965(1985)) (internal quotations omitted).   Here, the Court has already found

11   that "application of California law poses no constitutional concerns" because of

12   Pharmavite's significant contacts to California, including that Pharmavite is

13   headquartered in California and the misrepresentations were created and

14   disseminated from California.   D.E. #35 at 3;[12] *see also* Ex. 9 (Pharmavite's RFA

15   Resps., Nos. 2, 5–8, 10 and 12 (establishing California   contacts as to labeling,

16   product formulation, marketing and scientific studies).

17          Where the application of California law to a multi-state class satisfies

18   constitutional due process requirements, California law presumptively applies under

19   California choice-of-law rules.  *See Keilholtz*, 268 F.R.D. at 340; *Pecover v. Elec.*

20   *Arts, Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *17 (N.D. Cal. Dec. 21,

21   2010).   To rebut this presumption, Pharmavite bears the burden of showing that

22   "foreign law, rather than California law, should apply to class claims" under

23   California's three-step governmental interest analysis.   *Wash. Mut. Bank v.*

24   *Superior Court*, 24 Cal. 4th 906, 921, 103 Cal. Rptr. 2d 320 (2001); *McCann v.*

---

25   [12] *See also AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1107 (9th
26   Cir. 2013) ("[T]o the extent a defendant's conspiratorial conduct is sufficiently
     connected to California, and is not 'slight and casual,' the application of California
27   law to that conduct is 'neither arbitrary nor fundamentally unfair,' and the
     application of California law does not violate that defendant's rights under the Due
28   Process Clause.").

1   *Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82, 105 Cal. Rptr. 3d 378, 386–87 (2010).

2   First, "the court determines whether the relevant law of each of the potentially

3   affected jurisdictions with regard to the particular issue in question is same or

4   different." *Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107, 45 Cal.

5   Rptr. 2d 730, 740 (2006). Second, "*if* there is a difference, the court examines each

6   jurisdiction's interest in the application of its own law under the circumstances of

7   the particular case to determine whether a *true* conflict exists." *Id.* at 107–108

8   (emphasis added). Third, "*if* the court finds that there is a true conflict, it carefully

9   evaluates and compares the nature and strength of the interest of each jurisdiction in

10  the application of its own law to determine which state's interest would be more

11  impaired if its policy were subordinated to the policy of the other state." *Id.* at 108

12  (emphasis added).

13      As to the first step, following this Court's direction, plaintiffs seek

14  certification of a 17-state Class consisting of states that all have consumer

15  protection laws that are materially similar to the UCL and CLRA. (D.E. #35 at 2–

16  3) ("[S]hould choice-of-law analysis appear to pose problems at the class

17  certification stage, Plaintiff could seek to certify subclasses of putative class

18  members from individual states or subclasses of class members from groups of

19  states with consumer protection laws that are not materially different.").[13] *See* Ex.

20  22 (setting out the relevant laws in each of the 17 Class states). Pharmavite cannot

21  possibly satisfy its burden of establishing there are material differences in the 17

22  states' laws. *McCann*, 48 Cal. 4th at 81–82. As Judge Carter in this District found

23  in *Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012), the Ninth Circuit's

---

24  [13] A number of district courts in this Circuit have embraced the possibility of
25  subclassing in similar false labeling cases. *See, e.g., Forcellati v. Hyland's Inc.*,
    876 F. Supp. 2d 1155, 1159 (N.D. Cal. June 1, 2012); *Allen v. Hyland's Inc.*, No.
26  CV 12-01150, 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012) ("*Mazza*
    explicitly left open the possibility that a court could certify subclasses grouped
27  around 'materially different bodies of state law'"); *In re Computer Memories Sec.*
    *Litig.*, 111 F.R.D. 675, 685–86 (N.D. Cal. 1986) (cited by *Mazza*) (holding that
28  subclassing various state's law would be appropriate).

19

opinion in *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581 (9th Cir. 2012), did not change prior California law requiring a defendant to show that differences in state law are "material," that is, they "make a difference in this litigation," or change a plaintiff's ability to have a multi-state class certified under the UCL where there are no conflicts of law based on the "circumstances of [the particular] case." *Id.* at 547. Focusing on the particular facts and circumstances of this case, there are no material differences in the law of the 17 states.[14]

### c.  Reliance and Causation Issues Do Not Defeat Predominance.

It is well-established that to succeed on a consumer protection claim under the UCL, CLRA and ICFA, plaintiffs "need only show that 'members of the public are likely to be deceived'" by Pharmavite's representations. *Tobacco II*, 46 Cal. 4th at 312; *see also PJ's Concrete,* 345 Ill. App. 3d at 1002 (under ICFA multi-state class certification appropriate where the misrepresentation is uniform and "has at least the potential to deceive customers.").[15]   Further, as discussed *supra,* the California and Illinois consumer protection laws take an objective approach; that of the ***reasonable*** consumer, not the ***particular*** consumer.  A business practice is likely to deceive the public where "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie,* 105 Cal. App. 4th at 508; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130, 103 Cal. Rptr. 3d 83, 96 (2009) ("The question has arisen as to which members of the public need be likely to be

---

[14] Even if the Court finds California law cannot be applied to plaintiffs' proposed multi-state class (or a smaller subclass of states), at a minimum, the Court will be able to apply California law to plaintiffs' proposed alternative California-only UCL and CLRA classes.

[15] *See also Williams v. Gerber Food Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *Countrywide Fin. Corp. v. Bundy,* 187 Cal. App. 4th 234, 257, 113 Cal. Rptr. 3d 705, 722–23 (2010); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507–08, 129 Cal. Rptr. 2d 486 (2003).

20

deceived.  The law focuses on a reasonable consumer who is a member of the target population."); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679–80, 38 Cal. Rptr. 3d 36, 46 (2006) (CLRA is to be "liberally construed" and "[c]onduct that is likely to mislead a reasonable consumer thus violates the CLRA"); *see Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 505 (1996) (ICFA focuses on "reasonable person standard, *i.e.* whether the representation concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase."); *PJ's Concrete,* 345 Ill. App. 3d at 1002.[16]

The UCL claim does not require classwide proof of reliance or causation. *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *Tobacco II,* 46 Cal. 4th at 320 (2009)) ("[R]elief under the UCL is available without individualized proof of deception, reliance and injury."); *Mass Mutual Life Ins. Co. v. Super. Ct.,* 97 Cal. App. 4th 1282, 1290, 119 Cal. Rptr. 2d 190 (2002) ("[A] section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage."). Likewise, the ICFA and the consumer fraud laws of the other states in the multi-state class do not require proof of reliance. *See Connick,* 74 Ill. 2d at 501 ("Plaintiff's reliance is not an element of statutory consumer fraud."). *See also* Ex. 22 (state law chart). Rather, the ICFA and consumer fraud laws of the other UCL and CLRA subclass states simply require that a plaintiff have been deceived in some manner, which is supported by a finding that defendant's misrepresentations are material. *See Connick,* 174 Ill. 2d at 505; Ex. 22 (state law chart).

The CRLA does require a showing of reliance but the  reliance requirement is not materially different from the requirements of the consumer protection

---

[16] *See e.g., Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1223, 103 Cal. Rptr. 3d 614, 622 (2010); *Lavie,* 105 Cal. App. 4th at 512; *Kasky v. Nike Inc.*, 27 Cal. 4th 939, 951, 119 Cal.Rptr.2d 296 (2002); *see also Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1267, 10 Cal. Rptr. 2d 538 (1992); *Mass Mutual,* 97 Cal. App. 4th at 1290.

21

1    requirements in the other Class States because, like the UCL and ICFA, under the

2    CLRA, if "material misrepresentations were made to the class members, at least an

3    inference of reliance [i.e., causation/injury] would arise as to the entire class." *See*

4    *Mass Mutual*, 97 Cal. App. 4th at 1292–1293; *see also In re POM Wonderful LLC*

5    *Mktg. and Sales Practices Litig.*, No. ML 10-02199 DDP (RZx), 2012 WL

6    4490860, at *5 (C.D. Cal. Sept. 28, 2012) ("an inference of reliance arises as to the

7    entire class where, as here, material representations have been made to the entire

8    class). As the court in *Mass Mutual* explained:

9            Causation as to each class member is commonly proved more likely

10           than not by materiality. That showing will undoubtedly be conclusive

11           as to most of the class. The fact that a defendant may be able to defeat

12           the showing of causation as to a few individual class members does

13           not transform the common question into a multitude of individual

14           ones; plaintiffs satisfy their burden of showing causation as to each by

15           showing materiality to all.

16   97 Cal. App. 4th at 1292.

17          Materiality is "judged by an objective, 'reasonable man' standard," not

18   individual subjective beliefs, and is "subject to common proof." *In re POM*

19   *Wonderful*, 2012 WL 4490860, at *5; *see also Amgen Inc. v. Conn. Ret. Plans &*

20   *Trust Funds*, 133 S. Ct. 1184, 1195–96 (2013) (because "'[t]he question of

21   materiality . . . is an objective one, involving the significance of an omitted or

22   misrepresented fact to a reasonable investor,' materiality can be proved through

23   evidence common to the class. Consequently, materiality is a 'common questio[n]'

24   for purposes of Rule 23(b)(3)") (citations omitted).[17]  "Express product claims are

25   presumed to be material . . . ." *Pantron*, 33 F.3d at 1095–96; *see also Kwikset*, 51

---

26   [17] *See also Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977, 938 P.2d

27   903 (1997) ("[a] misrepresentation is judged to be 'material' 'if a reasonable man
     would attach importance to its existence or nonexistence in determining his choice

28   of the transaction in question[.]'").

22

1   Cal. 4th at 328.  Importantly, the misrepresentation need not be the "sole or even

2   the predominating or decisive factor influencing his conduct . . . .  It is enough that

3   the representation played a substantial part, and so had been a substantial factor, in

4   influencing his decision.'" *Tobacco II*, 46 Cal. 4th at 326–27; *see also Kwikset*

5   *Corp.*, 51 Cal. 4th at 327 (same).

6       Here, an inference of reliance is warranted.  Each bottle of Vitamin E sold

7   during the Class period uniformly made only one health benefit representation on

8   the labeling—that Pharmavite Vitamin E helps maintain a healthy heart.   As the

9   court in *Kwikset* found: "Simply stated: labels matter.  The marketing industry is

10  based on the premise that labels matter, that consumers will choose one product

11  over another similar product based on its label." 51 Cal. 4th at 328.  Likewise, in

12  *Negrete v. Allianz Life Ins. Co.*, No. CV 06-6838 CAS (MANx), 2012 WL 6737390

13  (C.D. Cal. Dec. 27, 2012) in finding predominance met, another Court in this

14  district agreed that "'Consumers are nearly certain to rely on prominent (and

15  prominently marketed) features of a product which they purchase,' particularly

16  where there are not otherwise compelling reasons for purchasing a product that is

17  allegedly worth less than the purchase price." *Id.* at *20 (citations omitted).  The

18  *Negrete* court's observations are applicable here as shown by Pharmavite's internal

19  marketing documents. ████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████  Ex. 5

21  (emphasis added).  Because plaintiffs will demonstrate classwide exposure through

22  common evidence, proof of reliance may be inferred from circumstantial evidence

23  warranting submission to a jury without testimony from each Class member.

24       **d.**   <u>**Relief Can Be Determined an a Classwide Basis.**</u>

25       There are multiple common classwide means of measuring economic loss

26  attributable to Pharmavite's violations of the UCL, CLRA and ICFA.  If plaintiffs

27  prevail on their CLRA claim, they would be entitled to the total purchase price paid

28  by Class members. *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993).

Plaintiffs' restitution remedy under the CLRA and UCL is the same. As noted in *Wiener*: "with respect to the restitution permitted under the CLRA and UCL, the Court has 'very broad' discretion to determine an appropriate remedy award as long as it is supported by the by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired." 255 F.R.D. at 670–71 (citing *Colgan*, 135 Cal. App. 4th at 693–700).

Here, plaintiffs have proffered the report of an expert economist who has shown that class-wide methods of proof are available that are directly tied to plaintiffs' theories of liability which can be used at trial to establish the amount that should be paid to the class as restitution or in damages. *See, e.g., Comcast Corp. v. Behrend*, No. 11-864, 569 U.S. - - -, 2013 WL 1222646, at *5 (March 27, 2013) (slip op.). Dr. Reutter has opined that "there are reliable methods available to estimate damages to the proposed plaintiff Class using common proof and a common formulaic approach." Ex. 24 at ¶ 16. Using both Pharmavite's sales data (*e.g.*, Ex. 24-1 and 24-5 (average wholesale and retail pricing and sales information by product); Ex. 15 (retailer sales information)) and/or data from independent sources that track and record Pharmavite's sales information, Dr. Reutter will be able to estimate damages to a reasonable degree of economic certainty based on either the "Retail Method" or the "Wholesale Method," which consists of calculating the total quantity (units sold) of Vitamin E distributed and sold in the states that are ultimately included in the class that the Court certifies, multiplied by an estimate of the retail or the actual wholesale price (as applicable) of each Vitamin E product. Ex. 24 at ¶¶ 7, 10–15. Thus, classwide damages attributable to the classwide misrepresentations are readily determined.

### 2. A Class Action is Superior to Other Available Methods of Adjudicating the Issues Raised.

Rule 23(b)(3) superiority "requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3)

2649214v1/013613

1   are those that can be adjudicated most profitably on a representative basis.'"

2   *Zinser,* 253 F.3d at 1190 (citation omitted); *see also Valentino v. Carter-Wallace,*

3   *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (superiority requirement satisfied where

4   class certification "will reduce litigation costs and promote greater efficiency").

5         Liability in this action will turn on whether Pharmavite's uniform heart

6   health representation is false or misleading; meaning judicial efficiency weighs in

7   favor of a class action. *See Delarosa,* 275 F.R.D. at 594–95.  Likewise, it is not

8   economically feasible for the many thousands of Class members to pursue their

9   claims against Pharmavite on an individual basis given that the amount in

10  controversy is in the average approximate range of $5–20 per purchase compared to

11  the enormous expense associated with litigating the question of whether

12  Pharmavite's claims are false. *Id.*; *see also Hanlon*, 150 F.3d at 1023; *Deposit*

13  *Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39, 100 S.Ct. 1166, 1174 (1980).

14  And, because the proposed UCL and CLRA multi-state and California resident-

15  only Classes involve California law and Pharmavite's conduct occurred in

16  California, having the litigation occur in a California court applying California law

17  is preferable. *See Wiener*, 255 F.R.D. at 671.

18        Consideration of the alternatives "underscores the wisdom of a class action in

19  this instance," because it is clear that "[i]f plaintiffs cannot proceed as a class, . . .

20  most will be unable to proceed as individuals because of the disparity between their

21  litigation costs and what they hope to recover." *Id.* at 672 (citations omitted).

22  Thus, there simply is no other practical method of adjudicating these claims.

23  **V.   CONCLUSION**

24        For the reasons stated herein, plaintiffs, on behalf of themselves and the

25  proposed Classes, respectfully request that the Court issue an order granting this

26  motion for class certification and appointing Plaintiff Bohn and Plaintiff Trujillo as

27  class representatives and the firms of Bonnett, Fairbourn, Friedman & Balint, P.C.,

28  Stewart M. Weltman LLC and Susman Godfrey L.L.P. as Class Counsel.

1 | Dated:  April 4, 2013                                    Respectfully submitted,

2

3 |                                                              MARC M. SELTZER
   |                                                              STEVEN G. SKLAVER
   |                                                              KALPANA SRINIVASAN
4 |                                                              OLEG ELKHUNOVICH
   |                                                              SUSMAN GODFREY L.L.P.
5

6 |                                                              STEWART M. WELTMAN
   |                                                              STEWART M. WELTMAN, LLC
7
   |                                                              ELAINE A. RYAN
8 |                                                              PATRICIA N. SYVERSON
   |                                                              LINDSEY M. GOMEZ-GRAY
   |                                                              BONNETT, FAIRBOURN, FRIEDMAN
9 |                                                                 & BALINT, P.C.

10

11 |                                                              By:  /s/ Marc M. Seltzer
    |                                                                    Marc M. Seltzer

12 |                                                              Attorneys for Plaintiff
    |                                                              *Rebecca Bohn and Cindie Trujillo,*
13 |                                                              *On Behalf of Themselves and All Others*
    |                                                              *Similarly Situated*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28