E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10430–GHK (AGRx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | *Rebecca Bohn v. Pharmavite, LLC* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** Motion to Certify Class (Dkt. No. 106)

     This matter is before us on Plaintiff Rebecca Bohn's ("Plaintiff")[1] Motion to Certify Class ("Motion"). We have considered the papers filed in support of and in opposition to the Motion, including Defendant Pharmavite, LLC's ("Defendant") Sur-Reply and Plaintiff's opposition to the Sur-Reply,[2] and deem this matter appropriate for resolution without oral argument. *See* L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

**I.     Background**

     On December 16, 2011, Plaintiff filed this consumer class action against Defendant. She principally alleges that the representation "helps maintain a healthy heart" that appears on the label of Defendant's Vitamin E products is false or misleading because "[n]umerous large scale clinical studies have shown that Vitamin E does not benefit the heart." (Mot. 1). Based on this allegation, Plaintiff

---

[1] After the Parties' meet and confer in February 2013 regarding the class certification motion, Plaintiff moved to file a Third Amended Complaint to add Cindie Trujillo as an additional named plaintiff. We granted the motion on April 1, 2013. (*See* Dkt. No. 103). While the class certification motion was pending, however, Trujillo withdrew as a plaintiff, (*See* Dkt. No. 123), because her job responsibilities, travel requirements, and communication restrictions made her unavailable to be deposed "in the near future." (Opp'n, Ex. H). Accordingly, we deem Trujillo to have abandoned this action and dismiss her as a named plaintiff.

[2] Defendant's Request for Leave to File a Sur-Reply, (Dkt. No. 135), is **GRANTED**. However, we view Defendant's apparent habit of filing sur-replies, (*see* Dkt. No. 100), with great disfavor, especially when the Parties could have discussed the issue raised in the Sur-Reply during the meet and confer and addressed the issue as part of the class certification briefing.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10430–GHK (AGRx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | *Rebecca Bohn v. Pharmavite, LLC* | | |

asserts the following three claims: (1) violation of the UCL; (2) violation of the Consumer Legal Remedies Act ("CLRA"); and (3) violation of the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. 505/1, *et seq*.

Plaintiff filed the instant Motion seeking to certify the following 17-state UCL and CLRA Class (applying California law):

> All consumers who, within the applicable statute of limitations, purchased Pharmavite's Vitamin E products in California, Arkansas, Connecticut, Delaware, Florida, Hawaii, Idaho, Illinois, Kansas, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Vermont and/or Washington.

Alternatively, Plaintiff seeks to represent a California-only UCL and CLRA Class and an Illinois-only ICFA class:

> All consumers who, within the applicable statute of limitations, purchased Pharmavite's Vitamin E products in California.

> All consumers who, within the applicable statute of limitations, purchased Pharmavite's Vitamin E products in Illinois.

Plaintiff seeks to certify the classes under both Rule 23(b)(2) and (b)(3).

**II. Analysis**

To obtain certification under Rule 23(b)(2) and (b)(3), Plaintiff must first satisfy the requirements of Rule 23(a), including establishing that she "will fairly and adequately protect the interests of the class." Rule 23(a)(4).

In determining Plaintiff's adequacy, we "must consider two questions: (1) do [Plaintiff] and [her] counsel have any conflicts of interest with other class members, and (2) will [Plaintiff] and [her] counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) (internal quotations omitted). Additionally, we also consider issues relating to Plaintiff's standing. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) (holding that former employees who lacked standing to seek injunctive relief would not "adequately protect the interests" of the "class members whose primary goal is to obtain injunctive relief"); *see also* Newberg on Class Actions § 3:59 (5th ed.) ("If a court finds that standing is lacking, then adequacy will be as well, for a plaintiff cannot be an adequate representative for claims she does not have standing to pursue."). Finally, Plaintiff's credibility or integrity issues are relevant to her adequacy to the extent they concern issues "directly relevant to the litigation" or involve "confirmed examples of dishonesty, such as a conviction for fraud." *Harris v. Vector Mktg.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) ("As noted by one court, '[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10430–GHK (AGRx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | *Rebecca Bohn v. Pharmavite, LLC* | | |

the likelihood of prevailing on the class claims.'" (quotation mark omitted) (quoting *Searcy v. eFunds Corp.*, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010))).

     Here, Plaintiff testified at her February 4, 2013 deposition that she bought the Vitamin E product at Costco around "November, December of 2011" as an "impulse buy" when she went shopping alone. (Bohn Dep. 125:12-25; 126:13-18; 111:10-17). She decided to purchase the Vitamin E upon seeing the heart health claim on the label, and she also bought calcium supplements along with the Vitamin E. (*Id.* 131:10-12; 111:10-22). She stopped taking the Vitamin E after about 10 to 14 days because she did not feel any effect. (*Id.* 137:18-24). Around "the same timeframe," probably within one week of her stopping, the topic of Vitamin E came up at a dinner between Plaintiff and her husband, and Stewart Weltman, one of the proposed Class Counsel, and his wife; as a result of that conversation, Plaintiff became the named plaintiff in this action. (*Id.* 149:1-152:14). Plaintiff and the Weltmans have been friends for 7 to 8 years and "get together probably . . . once a week." (*Id.* 151:7-13).

     After Defendant pointed out that it is unlikely that Plaintiff could have purchased the Vitamin E product in question in November/December 2011 because Defendant stopped selling that product to Costco after January 2009, (Poswillo Decl. ¶¶ 3,7), Plaintiff, for the first time, "went to CostCo and obtained a printed receipt of her purchase." (Reply 14-15). The receipt shows that the purchase was actually made on February 2, 2009 using the Costco member card of Geoffrey Kern, Plaintiff's husband, and that Super B Complex supplements, but not calcium, was purchased along with the Vitamin E. (Reply, Ex. 8). Costco membership rules require the cardholder to be present at checkout. (Dkt. No. 135, Markowitz Decl, Ex. 4). Plaintiff concedes, in a declaration, that she misremembered when she made her purchase, who she was with, and what else she bought, but that she "is [still] certain" she purchased the Vitamin E product and had read and relied upon the "helps maintain a healthy heart" statement in making her purchase. (Dkt. No. 137-1, ¶¶ 4, 9).

     The inconsistencies in Plaintiff's statements regarding her purchase – which forms the basis of this lawsuit – raise serious questions about her standing to assert the UCL and CLRA claims and her ability to prove a key element of the ICFA claim. To have statutory standing to assert claims under UCL and CLRA, Plaintiff must establish that she actually relied on the heart health claim in making the purchase. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (holding that the statutory standing provision of UCL "imposes an actual reliance requirement" on the named plaintiff); *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1022 (Ct. App. 2010) ("Under the CLRA, plaintiffs must show actual reliance on the misrepresentation and harm."). As for the ICFA claim, Plaintiff "must prove that he or she was actually deceived by the misrepresentation in order to establish the element of proximate causation," *Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill.2d 100, 199 (2005), which at minimum, requires Plaintiff to prove that she read and considered the heart health claim in making her purchase. *See Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 154 (2002).[3] Here, Plaintiff's inconsistent testimony is

---

[3] In *Oliveira*, the Illinois Supreme Court noted that it had declined to "address the 'ambiguity' regarding the relationship between [proximate] causation and reliance." 201 Ill.2d at 153. To the extent "actual deception" is required to prove proximate causation, the difference between proximate causation and reliance appears thin in an ICFA claim based on an alleged misrepresentation on product labels.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10430–GHK (AGRx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | *Rebecca Bohn v. Pharmavite, LLC* | | |

troubling on two levels. First, that she admits to having misremembered almost every other circumstance of her purchase significantly undermines her assertion that she is still "certain" she read and relied on the heart health claim in making her purchase, especially when the label includes several other benefits claims, including "Antioxidant" and "helps support the immune system." (Opp'n, Ex. A). Had Plaintiff taken into account only those claims in her purchase, she could not have actually relied upon or been deceived by the heart health claim. Second, she appears to have based her initial testimony on a memory that reconstructed the relevant events around her discussions with Weltman and the filing of this suit, when, in fact, the purchase took place nearly three years prior. This indicates that Plaintiff has, at least unknowingly, tailored aspects of her memory to fit the narrative of this action, which further increases the chances that she may have also unknowingly tailored other facts about her purchase – such as reliance and deception – based on the requirements of this suit.

Accordingly, Plaintiff's inconsistent testimony about her purchase raises serious questions about her standing to assert the UCL and CLRA claims. Moreover, the testimony poses a more than probable concern that her credibility will be a significant issue at trial, undermining the interest of the classes.[4] *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 97 (2d Cir. 1998) (in a class action alleging violation of the Fair Debt Collection Practices Act based on an allegedly noncompliant notice from the debt collection agency, affirming a finding of inadequacy when the named plaintiff "repeatedly changed his position as to whether he received" the notice "that form[ed] the very basis of his lawsuit," which "surely would create serious concerns as to his credibility at any trial").

---

Plaintiff cites *Smith v. Ill. Cent. R.R. Co.*, 223 Ill.2d 441 (2006) for the proposition that actual deception "can be inferred where (as here) the heart health representation is prominently featured on the front of each Vitamin E Product label." (Reply 18-19). *Smith*, however, was a negligence class action involving a train derailment and toxic substance exposure. *Id.* at 443. Because it had nothing to do with the ICFA, it can tell us little about the requirements of actual deception under the ICFA.

[4] Plaintiff argues that issues regarding her purchase would not be an issue at trial because standing is a question of law for the district court to decide. (Dkt. No. 137, at 10). However, proximate causation, or actual deception, is a substantive element of Plaintiff's ICFA claim. *See Oliveira*, 201 Ill.2d at 138 ("[T]o adequately plead a private cause of action for a violation of section 2 of the [IFCA], a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."). Moreover, statutory standing under the CLRA includes at least some triable factual issues. *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (Ct. App. 2010) (noting that an inference of classwide reliance arises if the plaintiff can show that material misrepresentations were made to the class and that "materiality is generally a question of fact"). Even if we determine that Plaintiff has standing to proceed on the UCL and CLRA claims, we cannot, as a practical matter, imagine a scenario in which Plaintiff would not testify at trial about the circumstances of her purchase, if only to set up the basis of this suit. This testimony would then immediately expose her to credibility attacks.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10430–GHK (AGRx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | *Rebecca Bohn v. Pharmavite, LLC* | | |

Additionally, the inconsistent testimony also raises serious questions about Plaintiff's interest in and commitment to vigorously prosecuting this action on behalf of the classes. Although she could have easily obtained a copy of the purchase receipt – just as she did in response to Defendant's opposition – to refresh her memory, Plaintiff never bothered to conduct any due diligence on the purchase that formed the very basis of her claims. Instead, she testified at her deposition based on unverified memories that turned out to be mostly incorrect. These issues could have been easily avoided had Plaintiff made the effort to conduct simple due diligence on her claims. That she failed to do so – and provided a deposition testimony without having done so – raises serious questions about her interest and commitment to protecting the interest of the classes. *See Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 398 (D.N.J. 1998) (noting that a class representative must "be more than merely pro forma – to do more than merely blindly rely upon counsel," and that a finding of "undue reliance upon counsel" may render a plaintiff inadequate).

The issues identified above are made even more troubling when viewed in light of Plaintiff's close personal relationship with Weltman. As the Eleventh Circuit has recognized, a close personal relationship between the named plaintiff and class counsel "creates a *present* conflict of interest – an incentive for [the named plaintiff] to place the interests of [the counsel] above those of the class." *London v. Wal-Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003). Such relationship warrants scrutiny because they pose "the danger of champterty," especially when the attorney's fees "will vastly exceed what any of the class members will receive." *Id.* at 1254-55. That Plaintiff recalled the events in a way that fits the narrative of this lawsuit and failed to conduct basic due diligence, when viewed in light of Plaintiff and Weltman's eight-year friendship involving weekly gatherings, become strong indicia of an ongoing conflict. They suggest that Plaintiff may have, at best, unduly relied on her close friend, or, at worst, have no real interest in prosecuting this action other than to assist her close friend in recovering a sizeable fee award relative to the small individual recoveries of the class members.

Plaintiff argues that cases in which personal relationships between the named plaintiffs and counsel resulted in a finding of inadequacy are distinguishable because some "additional facts showing financial intertwinement" are present in those cases. *See Drimmer v. WD-40 Co.*, 343 Fed. Appx. 219, at *1 (9th Cir. Aug. 19, 2009) (affirming district court's finding of inadequacy based on "the combination of a personal relationship [and] landlord-tenant relationship," and the plaintiff's "inexplicable disinterest in pursuing all remedies available to him"); *London*, 340 F.3d at 1255 (affirming finding of inadequacy based on the fact that the plaintiff and counsel had been friends since high school and that the plaintiff had been the counsel's stockbroker for many years). Plaintiff, however, cites no authority, and we found none, that requires financial intertwinement as a necessary element of a finding of inadequacy, especially when the facts present serious questions about Plaintiff's standing, her credibility, and her interest in vigorously prosecuting this action on behalf the classes. *See Martz v. PNC Bank, N.A.*, 2007 WL 2343800, at *5 (W.D. Pa. Aug. 15, 2007) (concluding that the named plaintiff was an inadequate representative because of his "close personal relationship" with his counsel and because he "admit[ted] that he is not certain if he is a member of the Class he seeks to represent."); *In re Currency Conversion Fee Antitrust Litg.*, 230 F.R.D. 303, 309 (S.D.N.Y. 2004) (suggesting that a close personal friendship would support a finding of inadequacy if there was a

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10430–GHK (AGRx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | *Rebecca Bohn v. Pharmavite, LLC* | | |

sufficient showing that the relationship made it difficult for named plaintiff to exercise independent judgment on behalf of absent class members, such that the conflict of interest is more than hypothetical).

Based on the facts of this case, we conclude that Plaintiff cannot adequately represent the class, given her inconsistent testimony regarding her purchase, her failure to conduct basic due diligence, and her close personal friendship with Weltman. Together, these issues raise serious questions about her standing to pursue certain claims, her credibility at trial regarding the factual basis of her claims, and her ability to place the interest of the classes above that of Weltman's.

**III.    Conclusion**

Based on the foregoing, Plaintiff's Motion is **DENIED**. This action shall proceed as Plaintiff's individual action.

**IT IS SO ORDERED**.

|  | -- | : | -- |
|---|---|---|---|
| | Initials of Preparer | | Bea |